```
                                                    FILED
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA       99 MAR -4 PM 1:29
                  SOUTHERN DIVISION
                                                   U.S. DISTRICT COURT
                                                    N.D. OF ALABAMA
GEORGE L. COX                 )
                              )
     Plaintiff,               )
                              )
v.                            )   CV-97-AR-3006-S    ENTERED
                              )
ENNIS BUSINESS FORMS,         )                     MAR - 4 1999
                              )
     Defendant.               )
```

**MEMORANDUM OPINION**

Currently before the court is a motion for summary judgment filed by defendant, Ennis Business Forms ("Ennis"). Ennis also filed a motion to strike certain portions of the affidavit which plaintiff, George L. Cox ("Cox"), submitted in response to the motion for summary judgment. After recounting the pertinent undisputed facts, the court will address the motion to strike.

Pertinent Undisputed Facts

Cox was hired as an account representative for Ennis in 1987 at age 45. He worked for Ennis until his termination on May 1, 1995, at age 54. During the pertinent time period, there were seven account representatives, including Cox. Only two were younger than Cox at the time of his termination - ages 38 and 52. Chris Forston ("Forston") was the Sales Manager who acted as Cox's immediate supervisor and who ultimately recommended and carried out Cox's termination.



During a company sales meeting, held in Knoxville, Tennessee in February, 1996, Nelson Ward, Vice President for Sales at Ennis, informed the sales representatives, including Cox, that Ennis intended to make several changes to company practice and policy. In particular, Ward informed the salesmen that Ennis wanted to emphasize a particular product line (the "Wolf City line") in its sales efforts. Furthermore, the company desired better reporting from the field, and would require salesmen to file quarterly reports. In addition, Ward announced that Ennis intended to implement a new computer system for its salespeople.

Shortly after the Knoxville sales meeting, Forston sent a memo to Cox. It directed him to focus efforts on the Wolf City product line and required him to report his progress to Forston on a regular basis. Believing that such a focus would prevent, rather than facilitate, an increase in his sales, Cox was reluctant to follow Forston's directives. After filing his next monthly report without discussing sales of the Wolf City product line, Cox was reprimanded by Forston. Forston then completed an "Employee Interview Form" which warned Cox of termination if he did not comply with Forston's directives. On April 25, 1996, Cox submitted his next monthly report. Ennis maintains that Forston was still not satisfied that Cox had complied with instructions to report on sales progress for the Wolf City Line. Forston phoned Ward and recommended that Cox be terminated, and Ward authorized the termination. On May 1, 1996 Forston informed Cox

that his employment with Ennis was terminated.

Ennis maintains that Cox was fired due to his alleged insubordination and admitted lack of cooperation with Forston in the face of changing company policy. Cox, however, claims that he was ousted because of his age. On September 16, 1996, Cox filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). After receiving a Notice of Right to Sue from the EEOC, Cox timely filed the present action on November 12, 1997.

To support his claim of age as a motivating factor in the decision to terminate him, Cox maintains that Jack Parsons, Forston's predecessor and Cox's previous supervisor, told several of the salesmen, including Cox, that Ward had instructed him to "get rid of the older guys." According to Cox, Parsons reported that he would not comply with Ward's demand, but that he wanted to warn the salesmen to be ready in the event that the company attempted to oust them. Cox speculates that Parsons' subsequent retirement was prompted by not wanting to comply with Ward's wishes, and that Forston was hired as Parsons' replacement to serve as Ward's "hatchet man" to carry out the alleged age-discriminatory plan. When Ward implemented new policy at the Knowville sales meeting, Cox began to believe that Parson's predictions were coming true. He saw the new computer system, the quarterly evaluations, and the more technologically savvy product lines all as intentional stumbling blocks designed to get

rid of the older salesmen. When he received Forston's disciplinary warnings, Cox apparently concluded that he had become the first target of Ward's plan to replace an aging sales force.

Ward has submitted an affidavit which denies ever having a discriminatory design on company policy or ever instructing Parsons to terminate anyone on the basis of age. Parsons has also submitted an affidavit which denies ever making representations to Cox or any other person to the effect that Ennis intended to act in a discriminatory fashion. Ennis has filed a motion to strike several statements in Cox's self-serving affidavit which contain the alleged statements by Parsons and Ward.

Ennis' Motion to Strike

When considering a motion for summary judgment, this court may only take into account evidence which would be admissible at trial. See F.R.Civ.P 56(e); See also *DeVaughn v. City of Clanton, Alabama*, 92 F.Supp. 1318, 1320 (M.D. Ala. 1997). Ennis argues that the alleged discriminatory statements by Ward are inadmissible double hearsay, cannot be considered for summary judgment, and should be stricken. This court disagrees.

Construing all disputed issues in favor of plaintiff, the court cannot determine when Parsons' alleged statements regarding Ward were supposedly first made, nor can it determine, on the

basis of the record evidence, whether Parsons acted as an agent of defendant authorized to represent such policies of the company at the time he allegedly made those statements. If Cox's allegations are to be believed, Parsons may well have made the disputed statements while still acting as Cox's supervisor in the Fall of 1995. Because the capacity in which Parsons allegedly spoke remains in dispute, the court cannot determine whether the alleged statements fall within the "party opponent" exception to the rules of hearsay, *see* Fed.R.Evid. 801(d)(2)(D), or whether those statements possibly fall within the "exceptions to the party opponent exception" under recent Eleventh Circuit holdings, as Ennis argues. *See, e.g.*, *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453 (11th Cir. 1997)(former supervisors were not authorized to speak to employees on personnel matters, nor did they participate in the decision to terminate, and therefore their statements did not fall within the party opponent exception).

  For purposes of ruling upon a motion for summary judgment, the court must resolve such lack of clarity in favor of plaintiff. Therefore, without hereby holding that Parsons' alleged statements do in fact fall within the party opponent exception to the rules of hearsay, the court must proceed *as if* the exception applies. Accordingly, defendant's motion to strike Parsons' alleged statements as hearsay is due to be denied.

However, should this action proceed to trial, Ennis will not be precluded from making similar objections, on the basis of hearsay, in the event that a proper groundwork is not prepared before Cox introduces the alleged statements by Parsons and Ward.

<u>Ennis' Motion for Summary Judgment</u>

Cox has filed suit under both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code § 25-1-10 *et seq*. Both causes of action place essentially the same burdens upon Cox. If Cox were able to present direct evidence of age discrimination, his claim would more readily survive summary judgment. Recognizing this, both parties have expended considerable effort debating whether the alleged statements of Parsons and Ward constitute "direct evidence." The court is persuaded that they do not.

Direct evidence is competent evidence, which, if believed, would prove the existence of a fact at issue without inference or presumption. *See Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir.1989). In the present case, Ward's alleged statements directing Parsons to terminate older salespersons are several inferences away from impacting Cox. On the basis of the record evidence, the court cannot determine whether Forston was indeed hired as Parsons' replacement to be Ward's "hatchet man." There

is no evidence that Ward instructed Forston to fire Cox or anyone else, even if Ward did so instruct Parsons.  Likewise, the court is unable to conclude, on the basis of the record evidence, that Forston himself was motivated to terminate Cox by anything other than Cox's own non-compliance with Forston's repeated requests and instructions.  It must be conceded that Ward gave the final authorization for Forston to fire Cox, but the court is not free to infer that the phone call giving rise to Ward's authorization was itself motivated by discriminatory animus.  At best, the hearsay statements, on which this court has reserved final judgment, constitute indirect evidence of discrimination in this instance.

Consequently, because Cox is unable to present direct evidence, the court's analysis follows the burden-shifting scheme originally set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Ennis concedes that Cox has successfully stated a *prima facie* case of age discrimination: At age 54, Cox was a member of a protected class.  He suffered adverse employment action (termination) and was replaced by a substantially younger individual.  He was qualified for the job.  The court is therefore satisfied that Cox's initial burdens have been met.

Furthermore, Ennis successfully rebuts Cox's prima facie case by proffering a legitimate, nondiscriminatory reason for terminating Cox.  As discussed above, Cox was admittedly reluctant to follow Forston's directives.  Surely Ennis is within

its rights, in its best business judgment, to determine that insubordination and non-compliance with management directives constitute sufficient grounds for termination. This court may not second-guess the management judgment of Ennis. Cox's termination may have been hasty, unwise, or possibly even a bad business decision, but if it was not determined by discrimination against his age, it is not this court's business. Thus, as is so often the case in ADEA actions, a determination of the present motion for summary judgment turns on whether Cox has presented evidence sufficient to allow a reasonable jury to conclude that Ennis's purported nondiscriminatory reason for terminating Cox is actually pretext for a discriminatory purpose.

The court believes that Cox has presented sufficient evidence to meet this burden. If ultimately admitted at trial, Ward's alleged statements alone might persuade a reasonable jury that age discrimination was afoot throughout the events leading to this litigation. But the court notes that even without those statements, Cox would probably clear the hurdle, because he has presented ample additional circumstantial evidence, such as: 1) Cox was immediately replaced by a man 16 years younger; 2) Cox was disciplined within weeks after Forston became his supervisor, whereas prior to that time, he had never received any sort of discipline by Ennis; 3) Cox had been one of Ennis' more successful sales personnel, making it strange that Ennis, at a time when business was slumping, would move so hastily to fire

him; 4) although Cox admits disagreeing with Forston's strategy of promoting the Wolf City line, there is a basis for contending that Cox did in fact eventually comply with Forston's directives before the firing; 5) Cox can tellingly argue to a jury that other salespersons who failed to properly submit monthly reports to management did not suffer the extreme and final discipline of termination.

The court recognizes that Ennis has likewise presented considerable evidence to bolster its position.  The fact that no other personnel in the protected class were fired tends to undercut Cox's case, as does the fact that those persons making termination decisions, including Ward, were themselves "older guys" in the protected age category.  Furthermore, both Parsons and Ward flatly deny the statements alleged by Cox, creating a classic "swearing match."

Despite the evidence in Ennis' favor, the disputes relate to material facts which only a jury can decide.  If this case reaches a jury, the jury will be called upon to determine the credibility of both Cox and his opponents.  This court need only conclude, and does so here, that a reasonable jury could find that the real reason Cox was terminated relates to his age, and that his alleged insubordination is merely pretext for Ennis' discriminatory animus.

Accordingly, the motion for summary judgment, insofar as it addresses Cox's claim under the ADEA, is due to be denied.

### Cox's Claim Under the
### Alabama Age Discrimination in Employment Act

Ennis correctly argues that courts must presume that new statutory enactments under Alabama law are applied prospectively only. The conduct about which Cox complains in this suit occurred prior to August 1, 1997, the date upon which the AADEA became effective. Absent a clear expression of the legislature's intent to the contrary, this court is compelled to conclude that the AADEA cannot be applied to Ennis' alleged discrimination, because the AADEA did not yet regulate Ennis' conduct during the relevant period. Accordingly, the motion for summary judgment is due to be partially granted, insofar as it addresses Cox's claim under the AADEA.

### Conclusion

In accordance with the reasons set out above, the motion to strike is due to be denied, and the motion for summary judgment is due to be partially granted, but only insofar as it addresses Cox's claim under the AADEA. A separate and appropriate order will be entered.

DONE this 4th day of March, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE